# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| R. J. ESCOBAL,<br>A. H. SOSA RODRIGUEZ,<br>C. S. ESCOBAL SOSA<br>  Roxboro, NC 27573 | ) <br> ) <br> ) <br> ) | |
| Plaintiff(s) | ) <br> ) | |
| | ) | Civil Action No. 1:25-cv-1992 |
| v. | ) <br> ) | |
| KRISTI NOEM, in her official capacity,<br>Secretary, U.S. Department of Homeland<br>Security;<br>ANGELICA ALFONSO-ROYALS, in her<br>official capacity, Director, U.S. Citizenship and<br>Immigration Services;<br>  2707 Martin Luther King Jr. Ave, SE<br>  Washington, DC 20528-0485 | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| PAM BONDI, in her official capacity,<br>Attorney General, Office of Attorney General,<br>U.S. Department of Justice;<br>  950 Pennsylvania Avenue, NW<br>  Washington, DC 20530-0001 | ) <br> ) <br> ) <br> ) <br> ) <br> ) | |
| Defendant(s). | ) <br> ) <br> ) | |

## PLAINTIFFS' ORIGINAL COMPLAINT FOR WRIT IN THE NATURE OF MANDAMUS AND VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

Sadaf F. Ahmed, Attorney for Plaintiff, JEELANI LAW FIRM, PLC, 3701 W. Algonquin Road, Suite 630, Rolling Meadows, Illinois 60008, Ph: 312-767-9030, Facsimile: 312-767-9030, Email: sadaf@jeelani-law.com.

## INTRODUCTION

COME NOW R. J. ESCOBAL (hereinafter "Plaintiff ESCOBAL" or collectively "Plaintiffs"), A. H. SOSA RODRIGUEZ (hereinafter "Plaintiff SOSA RODRIGUEZ" or collectively "Plaintiffs") and C. S. ESCOBAL SOSA (hereinafter "Plaintiff ESCOBAL SOSA" or collectively "Plaintiffs"), by and through the undersigned attorney, in the above cause, and state as follows:

1.      Plaintiff ESCOBAL, Plaintiff SOSA RODRIGUEZ and Plaintiff ESCOBAL SOSA are citizens of Uruguay. Plaintiff ESCOBAL is the victim of qualifying criminal activity in the United States, making him eligible for filing Form I-918, Petition for U Nonimmigrant Status.[1] Furthermore, Plaintiff SOSA RODRIGUEZ and Plaintiff ESCOBAL SOSA, as his spouse and son, respectively, and qualifying derivative family members, are also eligible to apply for the same relief.[2]

2.      In creating the U visa, Congress sought to incentivize noncitizen victims to engage with law enforcement, thereby strengthening public safety through increased cooperation. The U-visa is available to noncitizens who have been victims of certain serious qualifying crimes, provided they report the crime to law enforcement and cooperate in the subsequent investigation or prosecution thereof. However, the efficacy of the U visa program is contingent upon the timely provision of protection. If a noncitizen victim remains in legal limbo for an extended period of time after reporting a crime, this delay ultimately undermines the program's intended purpose.

3.      Plaintiff ESCOBAL has brought the instant action seeking a writ of mandamus to

---

[1] Individuals who are victims of certain qualifying criminal activity, have suffered substantial mental or physical abuse and are helpful or are likely to be helpful to law enforcement or government officials in the investigation or prosecution of criminal activity are eligible to apply for a U Nonimmigrant visa.

[2] As the spouse and son and qualifying family members of Plaintiff ESCOBAL, Plaintiff RODRIGUEZ and Plaintiff SOSA are eligible to apply for a U visa. However, because ESCOBAL is the principal U visa petitioner, USCIS must first approve his petition before any family members can qualify for a derivative U visa.

compel the United States Citizenship and Immigration Services ("USCIS") to fulfill its long-standing legal obligations under the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and the Due Process Clause of the United States Constitution. Although Plaintiff ESCOBAL is a victim of qualifying criminal activity that occurred before 2009, the Defendants' failure to implement the U visa program within a timely manner has unjustly deprived Plaintiff ESCOBAL of the opportunity to obtain critical immigration relief.

4.     Plaintiff filed his Form I-918 Petition for U Nonimmigrant Status on October 11, 2019, approximately fourteen years after the last incident or qualifying criminal activity occurred. This delay resulted from the widespread lack of awareness about the U visa program among law enforcement, other government entities, and the Plaintiff himself—an issue directly tied to the Defendants' failure to timely promulgate the necessary implementing regulations. The delay in considering the Plaintiff's U visa eligibility has been further aggravated by the Defendants' prolonged inaction, having failed to issue the required regulations for more than seven years after the program was established by Congress. In fact, it was not until 2009 that the Defendants began granting U visa status to eligible applicants, despite Congress explicitly directing Defendants to promulgate regulations to implement the U visa program no later than 180 days after the date of enactment. *See* Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, 119 Stat. 2960, § 828 (2006). Due to the annual statutory cap on U-visas and the substantial backlog of petitions, Plaintiffs' eligibility may remain in limbo for many years absent judicial intervention. Plaintiff ESCOBAL's Petition have now been in pending status since October 11, 2019, for period of over five years and eight months (over 68 months or 2084 days), despite the fact that the qualifying criminal activity

occurred more than twenty years ago, in or around January of 2005. Accordingly, Plaintiffs are entitled to receive a decision on their respective Petitions or in the alternative, placement on the U visa waitlist allowing for their Petitions to be prioritized if their case is still pending at the beginning of the next fiscal year.[3]

5.      Defendants cannot reasonably continue to use COVID-19 as a defense to their failure to adjudicate the Petitions as all USCIS Field Offices are fully operational at this time; as such, COVID-19 related issues do not prohibit an officer's ability to complete the adjudicative processing of this matter.

6.      Defendants are in violation of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. and have violated Plaintiffs' due process rights as guaranteed by the United Sates Constitution. As such, this action is brought to compel Defendants, and those acting under them, to take action on Plaintiffs' respective Petitions.

**PARTIES**

7.      Plaintiff R. J. ESCOBAL is a citizen of Uruguay and for purposes of the instant action, he is a resident of Person County, North Carolina. He is the petitioner of a properly filed Form I-918, Petition for U Nonimmigrant Status and he is eligible for a final decision by USCIS. (Receipt #EAC2002050011).

8.      Plaintiff A. H. SOSA RODRIGUEZ is a citizen of Uruguay and for purposes of the instant action, she is a resident of Person County, North Carolina. She is the beneficiary of a

---

[3] As of June 14, 2021, USCIS was given the discretionary authority to provide employment authorization to certain noncitizens with bona fide pending U visa nonimmigrant petitions in order to address the significant backlog of U-visa cases and the annual cap on U-visas. In order to exercise its discretionary authority, USCIS implemented the bona fide determination process through which certain eligible petitioners can receive a bona fide determination employment authorization document (BFD EAD) and deferred action. The first step in the process is for USCIS to determine whether the pending petition is bona fide (that is to determine whether the petitioner has properly filed a complete I-918 Petition, an I-918 Supplement B, certification, a personal statement describing the incident involving the qualifying criminal activity, and USCIS has received the petitioner's background and security checks from the petitioner's biometrics), and thereafter grant the petitioner with an employment authorization card. Once the BFD EAD is granted, USCIS may also exercise its discretion in granting deferred action to the petitioner. Deferred action is for the same duration of validity as the BFD EAD (four years). If the petitioner is not granted the BFD EAD, the petition is assessed for eligibility for the Waiting List Placement and thereafter final adjudication. Plaintiffs have received a bona fide determination and now await a full and final adjudication of their respective Petitions.

properly filed Form I-918A, Petition for U Nonimmigrant Status and she is eligible for a final decision by USCIS. (Receipt #EAC2002050035).

9.    Plaintiff C. S. ESCOBAL SOSA is a citizen of Uruguay and for purposes of the instant action; he is a resident of Person County, North Carolina. He is the beneficiary of a properly filed Form I-918A, Petition for U Nonimmigrant Status and he is eligible for a final decision by USCIS. (Receipt #EAC2002050055).

10.    Defendant KRISTI NOEM is the Secretary of the United States Department of Homeland Security (hereinafter "DHS"). This action is filed against her in her official capacity. Defendant NOEM is responsible for the enforcement of the INA and for the delegation of adjudicatory and discretionary authority to other employees of the DHS and USCIS pursuant to 8 U.S.C. § 1103(a); 8 C.F.R. § 2.1.

11.    Defendant ANGELICA ALFONSO-ROYALS is the Director of USCIS; she is an official generally charged with supervisory authority over all operations of USCIS under 8 C.F.R. § 103.1. This action is filed against her in her official capacity.

12.    Defendant PAM BONDI is the Attorney General of the United States; she is an official generally charged with supervisory authority over all operations of the Department of Justice (hereinafter "DOJ") under 28 C.F.R. § 0.5.  This action is filed against her in her official capacity.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction to hear this complaint, and the claims stated herein by virtue of 8 U.S.C. §§ 1101 et seq. Furthermore, jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, § 1361 and §2201-02 because this is a federal mandamus action brought to compel Defendants to perform their statutory duties owed to the Plaintiff. This Court has additional jurisdiction by

virtue of the Administrative Procedures Act, 5 U.S.C. §§ 701-706, because Plaintiff is seeking judicial review of inaction by one or more of the Defendants.

14.     Venue is proper in the District Court for the District of Columbia pursuant to 28 U.S.C.§1391(e) in that this is the district in which one of the Defendants resides.

## BACKGROUND

### I.     THE U VISA

15.     In 2000, as part of the Victims of Trafficking and Violence Protection Act ("VTVPA"), Congress created the U nonimmigrant visa ("U visa") to provide immigration relief to noncitizen victims of certain serious crimes who have suffered substantial harm and assist law enforcement in the investigation or prosecution of those crimes. Pub. L. No. 106-386, § 1513, 114 Stat. 1464, 1533 (2000) (codified at 8 U.S.C. § 1101 (note)).

16.     The U visa serves a dual purpose: to encourage noncitizen victims to report crimes and engage in the criminal justice process without fear of immigration-related consequences, and to enhance public safety by supporting law enforcement in the investigation and prosecution of serious crimes—aligning with the humanitarian values of the United States.

17.     Recognizing the societal benefits of empowering noncitizen survivors to come forward, Congress emphasized that both noncitizens and U.S. citizens would benefit when victims—whether of intimate partner violence or other serious crimes—are able to report offenses and fully participate in investigations and prosecutions without fear of adverse immigration repercussions. See *Victims of Trafficking and Violence Protection Act of 2000 (VTVPA)*, Pub. L. No. 106-386, § 1513(a)(1)(B), 114 Stat. at 1533.

18.     However, Congress simultaneously imposed an annual cap of 10,000 U visas for principal applicants, excluding derivative family members. 8 U.S.C. § 1184(p)(2)(A)–(B).

19.    Noncitizens may apply for a U visa if they have been victims of a qualifying serious crime—or an attempt, conspiracy, or solicitation to commit such a crime—within the United States. *Id.* § 1101(a)(15)(U)(iii).[4]

20.    Additionally, any "similar activity in violation of Federal, State, or local criminal law" may serve as a basis for U visa eligibility. *Id.*

21.    To be eligible for a U visa, noncitizen victims—and their qualifying family members must show that they suffered substantial physical or mental harm resulting from the crime, possess knowledge about the crime, and have been, are, or are likely to be helpful to law enforcement in its investigation or prosecution. *Id.* § 1101(a)(15)(U)(i)-(ii).

22.    To satisfy the cooperation requirement, applicants must obtain a certification from a Federal, State, or local law enforcement agency confirming their past, present, or anticipated assistance. *Id.* § 1184(p)(1).

23.    Petitioners may also request a waiver of any applicable grounds of inadmissibility from USCIS, which may grant such waivers if it determines doing so is in the public or national interest. *Id.* § 1182(d)(14).

24.    Congress intended that U visa petitioners receive relief without delay, noting that the program was created to provide "law enforcement with a mechanism to regularize the immigration status of cooperating individuals during criminal investigations or prosecutions." See Pub. L. No. 106-386, § 1502(a)(2)(B), 114 Stat. at 1464.

---

[4] Under the U-visa, USCIS recognizes the following crimes as being qualifying crimes for the purpose of being eligible for u-visa: Rape; Torture; Trafficking; Incest; Domestic violence; Sexual assault; Abusive sexual contact; Prostitution; Sexual exploitation; Stalking; Female genital mutilation; Being held hostage; Peonage; Involuntary servitude; Slave trade; Kidnapping; Abduction; Unlawful criminal restraint; False imprisonment; Blackmail; Extortion; Manslaughter; Murder; Felonious assault; Witness tampering; Obstruction of justice Perjury; and Fraud in foreign labor contracting.

25.    A U visa is generally valid for four years. 8 U.S.C. § 1184(p)(6).

26.    During that period, both principal petitioners and derivative beneficiaries are authorized to work in the United States. *Id.* § 1184(p)(3).

27.    Additionally, individuals in U visa status—whether principal or derivative—who have continuously resided in the U.S. for at least three years may apply to adjust their status and obtain lawful permanent residency (a "green card"). *Id.* § 1255(m)(1).

## DEFENDANTS' UNREASONABLE DELAY

### A. Defendants Unreasonable Delay in Implementing the Required Regulations Within 180 days

28.    Congress enacted the statutory provisions establishing the U visa in 2000, with those provisions taking immediate effect upon enactment. *See*, Michael D. Cronin, *Victims of Trafficking and Violence Prevention Act of 2000 (VTVPA) Policy Memorandum #2 – "T" and "U" Nonimmigrant Visas* 2 (Aug. 30, 2001).

29.    The Immigration and Naturalization Service ("INS"), the predecessor agency to the current Defendants, promptly acknowledged that the creation of the U visa reflected the United States' government's commitment to vigorously protecting victims of serious crimes. *Id.* at 1. The INS explicitly recognized Congress's dual objectives: to enhance law enforcement efforts and to safeguard noncitizen victims of criminal activity in the United States. *Id.* at 1 n.3.

30.    Nevertheless, despite clear statutory mandates, the Defendants failed to issue the necessary implementing regulations for the U visa program for over seven years. See USCIS, *New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status*, 72 Fed. Reg. 53,014 (Sept. 17, 2007). In fact, temporary protection from removal for potentially eligible individuals was not made available until 2007, and the adjudication of U visa petitions and the

granting of U visa status did not begin until fiscal year 2009—by which time petitions were already subject to the annual cap of 10,000 visas.

### B.  Defendants' Ongoing Delays in Adjudicating U-Visa Petitions and the Waitlist Process

31.    After the U visa program was implemented in 2007 with the issuance of regulations, the number of petitions for U nonimmigrant status quickly surpassed the annual statutory cap of 10,000.

32.    Given the significant volume of petitions, and the need to provide stability for victims cooperating with law enforcement, USCIS implemented a regulatory waiting list process. Under this system, once the annual statutory numerical cap is reached in a given fiscal year, all pending and newly submitted petitions are reviewed to determine eligibility for the waitlist or to receive a bona fide determination, even though final approval may be delayed due to the cap. *Id.*

33.    USCIS places eligible applicants for a U visa on a waitlist when the annual statutory cap of 10,000 U visas for principal petitioners (Form I-918) has been reached. If an applicant is found to be eligible for U nonimmigrant status but a visa is not immediately available due to this cap, USCIS may place the applicant on a waitlist.

34.     In determining whether a petitioner qualifies for placement on the waitlist, USCIS conducts an initial adjudication of the petitioner's eligibility for a U visa. Being placed on the waitlist means that USCIS has determined the applicant meets all the eligibility requirements for a U visa, but must wait until a visa becomes available at the beginning of the next fiscal year. See *USCIS Policy Manual*, vol. 3, part C, Ch. 6.

35.     The process involves reviewing the submitted forms for completeness, assessing supporting documentation, and conducting a criminal background check. It also includes checking DHS and other government databases, verifying cooperation with law enforcement

when needed, and evaluating any inadmissibility grounds. If applicable, a waiver application is considered, requiring additional evidence. If the initial submission is incomplete, a Request for Evidence or Notice of Intent to Deny is issued, outlining deficiencies and requesting further documentation. Petitioners have up to 90 days to respond, after which a final determination is made.

36.    Once placed on the waitlist, USCIS provides petitioners and their eligible family members with protection from removal through deferred action or parole, as outlined in 8 C.F.R. § 214.14(d)(2). Furthermore, being placed on the waitlist permits petitioners and their derivatives to obtain work authorization while awaiting a final decision on their U visa petition. See *Id.* § 274a.12(c)(11) & (14).

37.    Pursuant to applicable regulations, USCIS must place all eligible petitioners on the waitlist if they satisfy the statutory criteria but cannot be granted U visa status solely because the annual cap has been reached. See 8 C.F.R. § 214.14(d)(2). This requirement is essential, as petitioners not placed on the waitlist are ineligible for deferred action and  authorization unless they qualify for Bona Fide Determination ("BFD"). *Id.* § 214.14(d)(2).

38.    USCIS originally committed to adjudicating U visa petitions within six months. See *USCIS Response to the Citizenship and Immigration Service Ombudsman's (CISOMB) 2012 Annual Report to Congress* at 5.5. This timeline reflected Congress's intent to provide prompt relief and protection to U visa petitioners.

39.    As demand for U visas rapidly surpassed the statutory cap, petitioners have been compelled to wait approximately five years for a final decision on their Form I-918 petitions. See *USCIS, I-918 Petitions*.

40.     Furthermore, USCIS did not fulfill its obligation to place all eligible petitioners on the waitlist. For instance, in fiscal year 2018, USCIS placed only 7,421 principal U visa petitioners on the waiting list—fewer than the number of visas that would become available in the following year. See *USCIS, U Visa Filing Trends 7 (Apr. 2020)*.

41.     Despite efforts to streamline adjudications, processing delays have continued to grow. In fiscal year 2020, the median processing time for Form I-918 petitions was 54.3 months, reaching a peak of over 59.0 months in 2022. As of last year, the average processing time remained lengthy at 46.1 months.[5]

### C. Delay in Implementing the Bona Fide Determination Process

42.     In 2008, Congress amended the Immigration and Nationality Act to make noncitizens with *pending, bona fide* petitions for U nonimmigrant status eligible for work authorization. This change, enacted through the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 201(c), codified at 8 U.S.C. § 1184(p)(6), was intended to ensure that U visa petitioners received timely access to work authorization, thereby helping to offset harms caused by lengthy delays in petition processing.

43.     Importantly, a bona fide determination does not require a full adjudication of the petition. Instead, it involves a preliminary assessment that the petition was submitted in good faith and is not fraudulent, including a review of the petitioner's submitted filing.

44.     Following a bona fide determination, USCIS exercises discretion to evaluate whether the petitioner presents any national security or public safety concerns. If no such concerns exist, USCIS grants the petitioner deferred action and work authorization for four years, renewable until a final U visa decision is made.

---

[5] See, *https://egov.uscis.gov/processing-times/historic-pt*.

45.    Notably, petitioners who receive a positive bona fide determination are not placed on the waitlist. In practice, this process was intended to replace the waitlist as a mechanism for delivering interim relief more efficiently.

46.    Despite this streamlined approach, USCIS did not implement a bona fide determination process until June 14, 2021—over 12 years after Congress enacted § 1184(p)(6). When launched, USCIS acknowledged the severe consequences of multi-year delays, including financial instability and deterrence of crime victims from cooperating with law enforcement.

47.    The bona fide determination process was designed to be swift and efficient. USCIS is able to determine whether a petition is complete and eligible in a matter of minutes, relying on clearly defined criteria. Background checks are typically initiated within weeks of receipt and often completed within 48 hours. Nevertheless, USCIS's implementation has not significantly reduced these delays.

48.    In 2023, USCIS centralized all bona fide determinations at the new Humanitarian, Adjustment, Removing Conditions, and Travel Documents (HART) Service Center, claiming this would speed up processing. However, by the end of fiscal year 2023, the median time to receive a bona fide determination was 60.5 months—longer than the processing time for full adjudications just a few years earlier. (Available at:

https://www.uscis.gov/sites/default/files/document/reports/fy23immigrationapplicationsmadebyvictimsofabuse.pdf).

49.    Even though the number of new U visa petitions has declined in recent years, USCIS has not reduced processing times. The agency itself acknowledges that the current delays undermine the goals of the U visa program—namely, stabilizing victims of crime and supporting law enforcement.

## FACTUAL ALLEGATIONS

### A.  Plaintiff's U-Visa

50.     Plaintiffs have been residing in the U.S. since 2001.

51.      On or about January 18, 2005, in Danville, Virginia, Plaintiff ESCOBAL was driving southbound on W. Main Street with his son when their vehicle was violently struck by another vehicle operated by an intoxicated driver. At the time of the collision, the offender was operating the vehicle while under the influence of alcohol, in violation of state criminal laws. Plaintiff ESCOBAL sustained physical injuries to his chest, left eye, arm, and legs, and was immediately transported by emergency medical services to the Danville Regional Medical Center, where he received medical treatment for his injuries.

52.     Following the accident, investigating officers arrived at the scene and conducted a criminal investigation. Plaintiff ESCOBAL fully cooperated with law enforcement by providing a detailed description of the incident and the events leading up to the collision. As a result of the investigation, the intoxicated driver was arrested and subsequently charged with Driving a Motor Vehicle while Intoxicated. Plaintiff ESCOBAL later received a subpoena and appeared in court, where he provided an oral statement to the prosecutor. Throughout the criminal proceedings, Plaintiff ESCOBAL remained fully cooperative with both law enforcement authorities and the District Attorney's Office, never refusing to assist in any aspect of the investigation or prosecution.

53.     As a direct result of the traumatic nature of the crime, both Plaintiff ESCOBAL and his wife began experiencing severe psychological symptoms consistent with post-traumatic stress disorder. These symptoms included intrusive recollections and distressing dreams of the incident, emotional numbness, irritability, hyperarousal, sleep disturbances, and episodes of re-living the

incident over and over again. Plaintiff ESCOBAL was ultimately diagnosed with Major Depressive Disorder, recurrent moderate with anxious distress, and Generalized Anxiety Disorder. He has received ongoing psychological treatment and also sought physical treatment at the Orthopedic Clinic due to lingering physical pain from the crash.

54.      The impact of this crime has been profound, disrupting not only Plaintiff ESCOBAL's physical health but also his emotional well-being and family life. Despite this, Plaintiff ESCOBAL has consistently demonstrated a willingness to assist the authorities and has fully complied with all requests made by investigators and the prosecuting office in the criminal case.

55.      As a result of the government's unreasonable delay in adjudicating Plaintiff's U visa petition, Plaintiff ESCOBAL continues to suffer significant harm. The prolonged uncertainty has exacerbated his mental health conditions, including PTSD, anxiety, and depression, and has prevented him from obtaining the stability and legal protection that U visa status is intended to provide to victims who have cooperated with law enforcement.

56.      Plaintiff remains unable to access lawful status and the sense of security that comes with recognition under the U visa program, despite having fulfilled all statutory requirements and provided substantial assistance in the investigation and prosecution of the underlying crime.

### B.  Plaintiff has Suffered Irreparable Harm due to Defendants Delay and this Harm Remains Ongoing

57.      Petitioners eligible for U visas but subject to prolonged delays in receiving a bona fide determination endure prolonged uncertainty, economic hardship, and heightened vulnerability. Without work authorization, many are forced to navigate life without legal employment, exposing them to exploitation and deepening financial instability. These delays undermine the

protective purpose of the U visa program by placing petitioners at risk of removal—even while cooperating with law enforcement in ongoing investigations or prosecutions.

58.     Work authorization is more than a permit to earn a living; it is often a gateway to essential services and opportunities, including obtaining a Social Security number, accessing higher education, securing health insurance, and—in many states—qualifying for a driver's license. Without these, petitioners face severe barriers to basic mobility, medical care, and long-term stability.

59.     Plaintiff ESCOBAL has endured considerable hardships as he awaits an adjudication of his Petition and given his current immigration status, he has struggled to obtain adequate healthcare and other such benefits. These challenges have taken a significant emotional and mental toll on him. Additionally, Plaintiff ESCOBAL continues to live in constant fear of detention and deportation—an anxiety that has intensified under the current administration.

60.     Obtaining legal status in the United States would enable Plaintiff ESCOBAL to secure better employment opportunities and improve his financial stability. Additionally, it would provide him and his family with the security and stability they have long been denied. It would enable Plaintiff ESCOBAL to pursue better employment opportunities, allowing him to support himself and his family with increased financial independence and to live with dignity. Most importantly, it would relieve the constant fear of deportation that has plagued him and his loved ones for years. With lawful status, Plaintiff ESCOBAL would be able to fully participate in his community, access quality healthcare, and restore a sense of safety, permanence, and hope for the future—essentials that have been absent from his life due to the prolonged delay in the adjudication of his U visa petition.

61.    Furthermore, instead of encouraging cooperation with law enforcement as Congress intended, the absence of timely adjudication fosters fear of interaction with authorities and the ever-present threat of deportation. These harms are not abstract—they are borne out in the lived experiences of Plaintiff ESCOBAL and his derivative family members in this case.

### C.  Procedural History of Plaintiff's U Visa Case

62.    Plaintiff ESCOBAL was the victim of qualifying criminal activity on January 18, 2005.

63.    On October 11, 2019, Plaintiff ESCOBAL properly filed Form I-918, Petition for U Nonimmigrant Status, following an incident in which he was the victim of qualifying criminal activity, rendering him eligible to apply for the above stated benefit. **[EXHIBIT A].**

64.    On the same day, his spouse, Plaintiff SOSA RODRIGUEZ, and his son, Plaintiff ESCOBAL SOSA filed Form I-918A, Petition for U Nonimmigrant Status as qualifying family members of the principal applicant. **[EXHIBIT B].**

65.    On November 29, 2019, Plaintiff ESCOBAL and Plaintiff SOSA RODRIGUEZ appeared for their required biometrics appointment at a designated USCIS Application Support Center. Plaintiff ESCOBAL SOSA was not scheduled for a biometrics appointment in connection with the I-918A Petition, as he previously appeared at a designated USCIS Application Support Center where he  completed his required biometrics on October 23, 2017, in connection with another application for relief. **[EXHIBIT C].**

66.    On December 13, 2023, Plaintiff ESCOBAL received communication from USCIS informing him that his Petition for U nonimmigrant status was found to be bona fide and that he warranted a favorable exercise of discretion to receive employment authorization and deferred action. On August 14, 2024, Plaintiff SOSA RODRIGUEZ received communication from USCIS informing her that her Petition for U nonimmigrant status was found to be bona fide as

well. Plaintiff ESCOBAL SOSA has not yet received a bona fide determination on his Petition.

**[EXHIBIT D].**

67.    Despite the grant of interim relief, Defendants have yet to complete the final adjudication of Plaintiff ESCOBAL's Petition for U nonimmigrant status.

68.    Where USCIS has made a grant of the BFD EAD and deferred action, the petitioner is considered to have established a prima facie case for approval of the underlying Petition pursuant to INA 237(d)(1).

69.    Plaintiff has endured significant financial and emotional burdens as a result of the unreasonable period of time that her case has been pending without action by USCIS.

70.    Plaintiff ESCOBAL has not received a final decision from USCIS regarding his Form I-918 Petition, which as of the date of this filing has now pending for a total period of over five years and eight months (over 68 months or 2084 days)—and will likely continue to remain in this status without judicial intervention given the annual limit on U visa availability. Likewise, Plaintiff SOSA RODRIGUEZ and Plaintiff ESCOBAL SOSA's Petitions continue to remain pending for the same period and cannot be approved until Plaintiff ESCOBAL, as the principal U visa petitioner is granted U nonimmigrant status.

## COUNT I

### VIOLATION OF THE APA

### Failure to Adjudicate Plaintiffs' Respective Form I-918 Petitions or in the Alternative to Place Plaintiffs on the Waitlist

71.    All prior paragraphs are re-alleged as if fully stated herein.

72.    Plaintiff ESCOBAL, Plaintiff SOSA RODRIGUEZ, and Plaintiff ESCOBAL SOSA have a statutory right to apply for a U nonimmigrant visa pursuant to 8 C.F.R. 214.14(b).

73.    Defendants have a duty to adjudicate Plaintiffs' respective Petitions within a reasonable

period of time under 5 U.S.C. §555(b) or in the alternative place them on the U visa waitlist. 8 C.F.R. § 214.14(d)(2).

74.    Under the Administrative Procedure Act (APA), each federal agency is required to "conclude a matter presented to it . . . within a reasonable time." 5 U.S.C. § 555(b).

75.    The APA grants this Court authority to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Congress has made clear that immigration benefit applications should be processed within 180 days of their initial filing. 8 U.S.C. § 1571(b). Defendants' failure to adjudicate Plaintiffs' respective petitions within a timely manner constitutes an unreasonable delay in violation of 5 U.S.C. § 555(b).

76.    The duty owed to Plaintiffs is ministerial and so plainly prescribed as to be clear and free from doubt.

77.    No other adequate remedy is available to Plaintiffs.

78.    Defendants have conducted the initial investigation and have sufficient information and documentation about Plaintiffs to complete the adjudication of Plaintiff ESCOBAL, Plaintiff SOSA RODRIGUEZ and Plaintiff ESCOBAL SOSA's respective Petitions within the current fiscal year or in the alternative prioritizing their Petitions at the beginning of the next fiscal year by placing them on the U visa waitlist.

79.    Given the Defendants' failure to provide any justification for not adjudicating the Plaintiffs' respective Petitions—for over five years and eight months (more than 68 months or 2084 days), Plaintiffs have been forced to endure an unreasonably prolonged period of waiting.

80.    Defendants have failed in their statutory duty to provide a decision as to whether Plaintiff ESCOBAL, Plaintiff SOSA RODRIGUEZ and Plaintiff ESCOBAL SOSA are eligible for a U

visa within a reasonable period of time and in the alternative to place Plaintiffs on the U visa waitlist.

81.      Defendants have violated the Administrative Procedures Act, 5 U.S.C. § 701 et seq., as they are unlawfully withholding action on Plaintiffs' respective Petitions and have failed to carry out the adjudicative functions delegated to them by law with regard to Plaintiff ESCOBAL, Plaintiff SOSA RODRIGUEZ and Plaintiff ESCOBAL SOSA's case.

82.      Defendants' delay in this case is, as a matter of law, arbitrary, capricious, or otherwise not in accordance with the law. Defendants have willingly and unreasonably delayed and have refused to provide a decision as to Plaintiff's respective Petitions and their eligibility for the grant of a U visa, thereby depriving Plaintiffs of the rights to which they are entitled.

83.      This delay has caused, and will continue to cause, substantial and irreparable harm to Plaintiff ESCOBAL, Plaintiff SOSA RODRIGUEZ and Plaintiff ESCOBAL SOSA. In addition, as a result of this delay, Plaintiffs have incurred enormous costs and significant attorney's fees.

## COUNT II

## VIOLATION OF THE DUE PROCESS CLAUSE
### Failure to Promulgate the Required Regulations for the Implementation of the U Visa Program

84.      All prior paragraphs are re-alleged as if fully stated herein.

85.      The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person of liberty or property without due process of law.

86.      Congress created the U nonimmigrant visa (U visa) program through the Victims of Trafficking and Violence Protection Act of 2000, codified at 8 U.S.C. § 1101(a)(15)(U), to provide protection and immigration relief to noncitizen victims of qualifying crimes who have

suffered substantial physical or mental abuse and who are helpful to law enforcement in the investigation or prosecution of criminal activity.

87.     In establishing the U visa program, Congress explicitly delegated authority to the Department of Homeland Security (DHS) to promulgate regulations necessary to implement and administer the program, as required by law.

88.     Although the original enactment of the Victims of Trafficking and Violence Protection Act did not impose a specific deadline for the issuance of regulations implementing the U visa program, Congress subsequently addressed this omission in the Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, 119 Stat. 2960 (2006). In that legislation, Congress explicitly directed the Defendants to promulgate regulations to implement the U visa program no later than 180 days after the date of enactment. See *Id.* at § 828.

89.     The VAWA Reauthorization Act was signed into law on January 5, 2006, thereby establishing a statutory deadline of July 4, 2006, by which Defendants were legally obligated to issue implementing regulations. This created a clear, mandatory duty that remains unfulfilled.

90.     Nevertheless, Defendants failed to meet this obligation, not promulgating the necessary regulations to provide a consistent, lawful mechanism for victims of qualifying crimes to apply for and obtain U visas as Congress intended. In lieu of fulfilling this duty, Defendants resorted to a legally undefined and quasi-legal practice of granting certain U visa-eligible applicants a temporary form of relief known as "deferred action."

91.     Deferred action is merely a discretionary decision not to initiate removal proceedings against an individual and does not confer any legal immigration status. It lacks the statutory protections and benefits provided under the U visa program. In contrast, recipients of actual U

visas are entitled to meaningful legal rights and benefits, including the ability to obtain employment authorization, travel outside the United States, access social and protective services, and begin accruing time toward eligibility for lawful permanent residence. See 8 U.S.C. § 1255(m), which provides that U visa holders may apply for lawful permanent resident status after three years of continuous presence in the United States.

92.     DHS's prolonged inaction, compounded by the delayed implementation of governing regulations, unlawfully interfered with Plaintiffs' ability to avail themselves of the protections and benefits Congress intended.

93.     Defendants' failure to promulgate regulations within a reasonable time, despite a clear congressional mandate and the availability of lawful immigration benefits under the U visa program, continues to harm eligible crime victims and undermines the statutory framework established by Congress.

94.     As a direct and proximate result of DHS's failure to timely promulgate the required regulations, and ongoing delay in adjudicating Plaintiffs' respective Petitions, or in the alternative, placing Plaintiff ESCOBAL, Plaintiff SOSA RODRIGUEZ and Plaintiff ESCOBAL SOSA on the U visa waitlist, guaranteeing the prioritization of their respective Petitions at the beginning of the next fiscal year, Plaintiffs have suffered and continue to suffer significant harm, including prolonged uncertainty, inadequate employment opportunity, emotional and psychological distress, and vulnerability to exploitation and instability.

95.     DHS's failure constitutes a violation of Plaintiffs' due process rights under the Fifth Amendment of the United States Constitution.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays:

1.      That the Defendants be cited to appear herein and that, upon due consideration, the Court enter an order mandating a time certain to adjudicate Plaintiffs' respective Petitions or in the alternative, place Plaintiff ESCOBAL, Plaintiff SOSA RODRIGUEZ and Plaintiff ESCOBAL SOSA on the U visa waitlist for prioritization of their respective Petitions during the next fiscal year.

2.      In the alternative, that the Court compel Defendants, and those acting under them, to perform their duty to adjudicate Plaintiffs' respective Petitions immediately or alternatively prioritizing the adjudication of their respective Petitions when the U visa cap resets at the start of the new fiscal year.

3.      Declare that USCIS's failure to timely implement the U visa program from 2000 to 2009 constitutes unlawful agency inaction, causing unjustified harm to pre-2009 victims of qualifying crimes, and entitles Plaintiffs to retroactive relief

4.      Declare that USCIS's unreasonable delays in processing Plaintiffs' U visa Petitions violates the Administrative Procedure Act, 5 U.S.C. § 706, and the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

5.      Order USCIS to provide full U visa adjudication of Plaintiffs' respective Petitions or in the alternative, place Plaintiff ESCOBAL, Plaintiff SOSA RODRIGUEZ and Plaintiff ESCOBAL SOSA on the U visa waitlist, guaranteeing the prioritization of their respective Petitions at the beginning of the new fiscal year when the U visa cap is reset.

6.      Enjoin USCIS from relying on its FIFO processing defense, allowing for discovery where evidence will show deviation from FIFO procedures;

7.      Declare that Plaintiffs are eligible to affirmatively apply for non-LPR cancellation of removal, without the requirement of being placed in removal proceedings.

8.    Order USCIS to recognize and credit Plaintiffs for time spent under "U interim relief", including deferred action and employment authorization, towards eligibility for adjustment of status.

9.    Declare that time spent in deferred action while awaiting U visa adjudication shall be counted toward the three-year continuous physical presence requirement for lawful permanent residence under INA § 245(m).

10.    Grant such other and further relief as the Court deems just, proper, and equitable.

11.    Finally, that the Court award reasonable attorney's fees under the Equal Access to Justice Act, 5 U.S.C. § 504, and such other and future relief as this Court deems proper under the circumstances.

Date: June 26, 2025                                    Respectfully submitted,


                                        /s/ Sadaf F. Ahmed
                                        **Sadaf F. Ahmed, Esq. (IN0013)**
                                        **JEELANI LAW FIRM, PLC**
                                        **3701 W. Algonquin Road, Suite 630**
                                        **Rolling Meadows, IL 60008**
                                        **sadaf@jeelani-law.com**
                                        **Phone:(248) 850-7841**
                                        **Fax:(312) 767-9030**
                                        ***Counsel for Plaintiffs***